FLORINDA PROPES v. PEYTON PROPES et al.,
Appellants.

Division Two, January 9, 1903.

1. **Deed in Partition to Husband and Wife: HUSBAND'S INTEREST.** A deed made in an effort at voluntary partition of their jointly inherited estate by some of the coparceners to another coparcener and her husband does not create an estate by the entirety. A deed conveying to a husband and his wife her share of property in which she had an undivided interest by inheritance will vest in him no greater interest than if the deed were made to her alone. As the lands were rightly the wife's by descent, having descended to her by

operation of the statute, a deed made in an effort at voluntary partition, conveys no title to her, nor to any of the coparceners, but simply adjusts among them their right to several possession.

2. ———: ———: BY HER DIRECTION. A deed made to a coparcener and her husband, by her direction, conveys no title to him.

3. ———: MORE THAN HER SHARE: HUSBAND'S INTEREST. If the deed in voluntary partition conveys to a wife and her husband more than her share in the estate jointly held by her and her co-tenants, and the husband has paid money for equalizing the shares of each coparcener, he acquires an interest in common with her in proportion to the amount paid by him, with interest.

4. ———: ———: ———: SET OFF: PLEADING. But in such suit there should not be set off against his claim for money paid by him for equality of partition money she loaned him unless there is something in the pleadings which authorizes such loan to be taken into consideration.

5. Husband and Wife: CRIMINAL CONDUCT: ILL USAGE. A husband who strikes a wife with his fist while she is pregnant, is guilty of "criminal conduct" within the meaning of the statute authorizing her to live separate and apart from him for criminal conduct towards her, and such conduct, and the ill usage set out in the opinion, are held not only to justify her in living separate and apart from him, but to authorize the court to decree that she may enjoy the real estate which she has inherited from her father for her sole use and benefit, and that he be enjoined and restrained from in any way interfering therewith.

Appeal from Holt Circuit Court.—*Hon. E. A. Vinson-haler,* Special Judge.

REVERSED AND REMANDED (*with directions*).

*C. A. Anthony, S. F. O'Fallon* and *John Kennish* for appellants.

(1) The deed, on its face, created in plaintiff and defendant an estate by the entirety. Pomeroy's Equity Jurisprudence (2 Ed.), sec. 1376; Bispham's Principles of Equity (5 Ed.), sec. 469. Some incompetency of mind showing an incapacity at the time of executing it or some imposition practiced on the donor or testator, some confidence abused or undue influence exerted, should be shown to authorize a court to exercise the

power of setting aside wills or deeds, properly executed. Moore v. Moore, 67 Mo. 198. Want of consideration can not be shown against the recitation in the deed, for the purpose of defeating the operative words of the deed. Bobb v. Bobb, 89 Mo. 419; Taylor v. Crockett, 123 Mo. 300; Henderson v. Henderson's Exrs., 13 Mo. 151. (2) Defendant's estate in the land was not a gift from the wife. The deed in this case was not made by Florinda Propes, but by others, and conveyed lands purchased as well as lands partitioned. And when the husband and wife assumed and undertook to pay for those lands, the transaction was complete and unavoidable. (3) The court erred in finding that the defendant was indebted to plaintiff for money loaned to defendant in the year 1889, and requiring payment of such indebtedness, before defendant could be restored to his marital rights in the lands in controversy. No issue was tendered by the pleadings as to money loaned to defendant. (4) The court erred in its decree divesting plaintiff of title and restraining him from the control and possession of the lands in controversy. Martin Meyer died in 1886 and the defendant Propes married his daughter Florinda, February 14, 1889. One child was born of the marriage in 1898. Defendant's marital rights were vested before the taking effect of the amendment to section 6869, Revised Statutes 1889. The addition of the words "real estate" in said section, now section 4340, Revised Statutes 1899, first appeared in the revision of 1889, and did not take effect until several months after the marriage of plaintiff and defendant. Defendant, by reason of his marital rights under the statute then in force, was entitled to the possession of his wife's lands. Arnold v. Willis, 128 Mo. 149; Flesh v. Lindsay, 115 Mo. 1; Dyer v. Wittler, 89 Mo. 81; Mueller v. Kaessmann, 84 Mo. 318; Bledsoe v. Simms, 53 Mo. 305. This right to the possession of his wife's land was a vested right, and the amendment to section 6869 could not be construed as taking away the husband's right then existing, as that would deprive him of property without due process of law, and would be

unconstitutional and void.  Evidently this amendment was not intended to curtail the rights of a husband theretofore married, and even if that was the intention, the act would be in conflict with article 2, section 15, of the Constitution, forbidding retrospective legislation. Arnold v. Willis, 128 Mo. 145; Leete v. Bank, 141 Mo. 574; Leete v. Bank, 115 Mo. 184; Pritchard v. Norton, 106 U. S. 132; Dunn v. Sargeant, 101 Mass. 336; Reeve's Dom. Rel. (4 Ed.), p. 5, note; Schouler Dom. Rel. (5 Ed.), sec. 114.  Where a husband, without fraud and without being guilty of an act entitling the wife to a decree of separation, obtained a vested interest in property of the wife, the court of chancery, on the application of the wife, can not interfere with the husband's interest so as to place it beyond his reach.  Van Duzer v. Van Duzer, 6 Paige 336, 31 Am. Dec. 257.

*T. C. Dungan* for respondent.

(1)  If the only object was to partition and set apart what already belonged to the wife, then no new title would be conveyed, then the title of the part so set off would still be the wife's as before the partition, and the deed ought to have been made to the wife alone, and the husband would take no title, even if his name was inserted in the deed.  Whittsett v. Wamack, 159 Mo. 14; Palmer v. Alexander, 162 Mo. 127; Cottrell v. Griffiths (Tenn.), 65 S. W. 397.  Under our statute, prior to the amendment of 1889, the husband's marital right in his wife's lands was not an estate, as at common law, that could be sold under execution for his debts, or alienated by him; even the rents and profits were exempt from his sole debts; so that such marital interest was simply a usufruct right during their joint lives, and not an estate at all, and such right was only one in possession, and unless possession was had during coverture by the husband, he had nothing except the right to take, or recover such possession.  If, however, a child was born of the marriage, he became then vested with an estate as tenant by the curtesy initiate, which,

upon the death of the wife, became consummate for the life of the husband. The marital interest, then, of the husband being merely usufruct and not a vested estate in the husband, it was clearly within the power of the Legislature to change such right before it became a vested one in possession, by the amendment of 1889, just as it might and did abolish the right of the tenant by the curtesy of the husband in a wife's lands after marriage and before the birth of a child. Mitchell v. Violet (Ky.), 47 S. W. 195; Phillips v. Farley (Ky.), 66 S. W. 1006. (2) (a) A wife may maintain suit against her husband not only as to her separate property or provision therefrom, but she may also in other cases, where he improperly interferes with her rights by making unwarrantable claims on her property. 1 Story's Equity, sec. 29; 2 Story's Equity, secs. 167, 246, 847 and 956; Bright on Husband and Wife, 471; Barber v. Barber, 21 How. 582; Walter v. Walter, 84 Mo. 140; Sackman v. Sackman, 143 Mo. 576; Woodward v. Woodward, 148 Mo. 241. (b) As to wife's right of possession of her property, in her own right, or sole and separate where the husband abused her, and caused her to live separate and apart from him, and as to effect of section 6865, Revised Statutes 1899, or an action or proceeding independent of such statute: Sackman v. Sackman, 143 Mo. 576; Woodward v. Woodward, 148 Mo. 241.

BURGESS, J.—Martin Meyer, in his lifetime, was seized and possessed of about 700 acres of land in Holt county, Missouri, including the land in controversy, and he was also possessed of about $21,000 in money and personalty. He resided upon the said land and died thereon, intestate, October 4, 1886, leaving a widow, Catherine Meyer, and eight children surviving him, viz., John Meyer, George Meyer, Alexander Meyer, Amos Meyer, Mary Ann Griffith, Eliza Ritchie, Sophronia Martin and Florinda Propes, the plaintiff. The widow elected to take a child's part in said estate. The estate was duly administered upon and fully settled in

the Holt County Probate Court, and final distribution made thereof, the widow and each child receiving the sum of $2,268.50. The widow, Catherine, purchased the undivided interest of Eliza Ritchie, being one-ninth of said land, and thereby became the owner of a two-ninths part thereof in fee simple. No dower or homestead in same was ever claimed, assigned or set off to the said widow. She died on June 13, 1895, leaving a will, and devised thereby all her undivided two-ninths part of said real estate to seven of the said children equally, plaintiff being one of those included, and Eliza Ritchie being the one excluded.

Defendant Propes married plaintiff February 14, 1889. After the death of Catherine the sons and the defendant went to the office of Van Buskirk, an attorney, and employed him to prepare an agreement to be signed by all the heirs of Martin Meyer, and the children and devisees of Catherine Meyer (except Eliza Ritchie), agreeing to the appointment of commissioners then selected and named, to make partition of all the lands and estates of said Martin and Catherine Meyer, deceased, each binding themselves to take such land, or money and land, or money alone, as said commissioners might set off to them respectively, each party to make and accept deeds or money and abide the partition of the said commissioners. Plaintiff was not present and had nothing to do with it, and knew nothing of it, until the writing was presented for her signature, when she signed same. After plaintiff and some others had signed it some changes were made by Van Buskirk by making additions and changes therein, without her knowledge or consent. The time of meeting being changed she was notified of the changed date, and on the day set by the changed date, all parties met at the old homestead and the commissioners, Roecker, Scott and Meyer, made a partition and assignment to the different children and heirs, as provided by such changed agreement, and they assigned to plaintiff, Florinda Propes, 120 acres, being the east half of the northeast quarter and the northwest quarter of the northeast

quarter of section twenty-three, in township sixty-one, of range thirty-three, of the land in controversy, with the condition that she should pay to her brother, Alex. Meyer, $1,678.38. Attorney Van Buskirk, being present, asked plaintiff how she wanted her deed made, notwithstanding the written agreement drawn by him, specifying to whom same was to be made. Plaintiff said, "Make it to me." He then told her as she had no children, it would be different with her, that she must leave it to some one after her death. She replied, "Of course I want it to go to my husband after my death."

Van Buskirk prepared the deed shortly thereafter and drew same to Florinda Propes as the second party, conveying the land to her, Florinda Propes, her heirs and assigns. He saw a part of the heirs and had the deed to Mrs. Propes signed and acknowledged by them, but afterwards he changed said deed by inserting in the portion thereof describing the second party, after the words, "Florinda Propes, heirs of said Martin and Catherine Meyer, deceased," and before the words, "party of the second part," the words, "and Peyton Propes, her husband," without the knowledge or consent of Florinda Propes. He admits this change after such signatures and acknowledgments, but states it was because of inadvertence in omitting them when drawing the deed. Defendant was in bad health in 1896 and the land was rented to Mr. Landry for that year, against the consent of plaintiff, and was rented to one Jack Madaris in the fall of 1896 to farm for the year 1897, on the shares, with the understanding and contract that he was to board in the family and have his washing done while tending the farm. In the summer of 1897, after the crop was planted, defendant went to Colorado and stayed till the fall, and the land was rented in the fall of 1897 again to Madaris for the year 1898, under the same terms as before. There was trouble between plaintiff and her husband over the deed, and the renting to Landry in 1896 and also in 1897, before defendant went to Colorado. Defendant was then asserting

title and right to rent and control the land and property, over which they disagreed and finally separated, the plaintiff leaving the place to live elsewhere.

After the commissioners who were selected to make partition of the land, assigned to the plaintiff that portion in controversy, and decided that she should pay Alexander Meyer, $1,678.38, she and her husband executed their note to him to secure its payment, upon which he afterwards paid the sum of $240.

After the execution of the partition deed by plaintiff's brothers and sisters to her, or, to her and her husband as the case may be, and she and her husband executed to them deeds for their respective allotments, defendant took exclusive control of the farm, and appropriated the rents and profits thereof to his own exclusive use and benefit.

The court found the facts and declared the law to be as follows:

"Martin Meyer, whose home was in Holt county, State of Missouri, died there intestate in 1886, leaving a large estate which vested in his eight children, subject to homestead and dower rights of his widow. Plaintiff was one of said decedent's children, and in February, 1889, was married to defendant, and is now his wife. The personal estate of said decedent was distributed in process of administration in the probate court of said Holt county, plaintiff receiving $2,268.50. The widow was permitted by the heirs to remain in control of all the lands during her lifetime; and she rented to the parties to this cause the lands in controversy; and they paid rents to her until March 1, 1896. She died in July, 1895. Prior to her death the widow purchased of her daughter, Eliza Ritchie, her one-eighth interest of all the lands of said Martin Meyer, and devised same to seven of her children. Whereby plaintiff acquired one fifty-sixth of all of said lands in 1895. By mutual agreement and by deeds *inter sese* these lands were divided in July, 1895, after the mother's death, the heirs agreeing to take what Albert Roecker, George Meyer, and James Scott, who had been

agreed upon to make division, might decide.   The lands
in controversy were set apart to plaintiff and were val-
ued at $4,800, which was in excess of her share in the
sum of $1,678.38, and for this sum plaintiff and defend-
ant executed their note to Alexander Meyer.   Mr. Van
Buskirk, an attorney at law in said county, acting for
all parties in the division, advised them as to the law
of descents, and stated to plaintiff as she had no child,
if the deed were made to her alone, at her death the
title would vest in the brothers and sisters to the ex-
clusion of her husband.   Plaintiff said she wanted her
husband to have it after her death.   Mr. Van Buskirk
then suggested that the deed be made to both husband
and wife, then in the event of her death, her husband
would take the land.   In response to this plaintiff said-
she wanted "Pate" (her husband) to have it, and to
make it that way.   Nothing was said as to the powers
and rights of her husband, during the life of plaintiff,
over this land.   There is no evidence of intentional
fraud, unfair dealing or any improper influence on
the part of Mr. Van Buskirk.

   "The law had been as stated, but the preceding
Legislature had changed it, so that the defendant would
have inherited one-half in the case advised upon, but
of this change Mr. Van Buskirk was, I presume, not
aware at the time.

   "The deed was made conveying the lands to plain-
tiff and defendant and an estate by the entireties cre-
ated in them.   They continued to occupy these lands
until 1898, when defendant, becoming suspicious of his
wife's chastity and charging her with infidelity, and,
after much trouble, she in December, 1899, left the
home, and defendant has since occupied the lands, rent-
ing same and excluding plaintiff from any control or
profit therein.   The evidence shows rental value $300
per annum.

   "In 1889 plaintiff loaned defendant $1,000, which
has not been repaid.   Upon the note executed to Alex.
Meyer on division of the land plaintiff has paid $950,
and defendant $240, and for the balance due thereon

judgment has been entered in this court against both plaintiff and defendant for $—— date ———. There was born to these parties in November, 1898, a son.

"Upon the facts found the court declares the law to be that the creation of this estate was a gift from the wife and is presumably invalid; that this presumption 'can only be overcome, if at all, by clear evidence of good faith, of full knowledge, and of independent consent and action.' The finding is that she did not have full knowledge of the effect of this deed during her life. The court further finds that plaintiff is entitled to recover the $1,000 loaned, with six per cent interest and one year's rent on 18-56  $1,660, or 96, $1,756. The court finds that plaintiff was not justified in the separation but was in fault."

To which finding of the court the defendant then and there excepted and still excepts.

After unsuccessful motions to set aside the finding of facts, and to grant defendant a rehearing and new trial, the following decree was rendered:

"It is now adjudged that the defendant be divested of all title vested in him, under the deed in issue, and that plaintiff be invested with the full title to the lands in controversy, subject, however, to such rights as defendant may have as the husband of plaintiff. That plaintiff recover of defendant the sum of $1,756 and that plaintiff be put in the sole possession of the lands until the sum so found due this plaintiff be fully paid, and that defendant be enjoined from interfering with plaintiff's possession until such sum be fully paid. That upon the payment of said sum, the defendant shall be restored to his marital rights."

The first point for consideration is what is the legal effect of the partition deed from the other tenants in common to plaintiff, or to her and her husband for the land in question, conceding that it is a legal and valid instrument? Defendants insist that on its face it created in plaintiff and defendant Propes an estate by the entirety.

A similar question was before this court in the

case of Whitsett v. Wamack, 159 Mo. 14, in which it was held that a deed of release or quitclaim made by two coparceners to a third and her husband in an effort at voluntary partition of their jointly-inherited estate conveys no title to the husband.

In Palmer v. Alexander, 162 Mo. 127, the plaintiff and his sister made parol partition between themselves of the lands inherited from their father, but by mistake the deeds incorrectly described the lands. Thereafter she married, and to correct the mistake, new deeds were made, but in the deed to her, she and her husband were named as grantees, and on the theory that this deed created an estate by the entirety in them, after her death, plaintiff bought the land from the surviving husband, and it was held that the husband acquired no title to the land by the deed in partition, and therefore his deed to plaintiff conveyed none. That the lands were rightly the wife's by descent, having descended to her by operation of the statute, and the deed conveyed no title to her, but simply adjusted among the co-parceners the right to several possession by metes and bounds.

So in the recent case of Cottrell v. Griffitts (Tenn.), 65 S. W. 397, the Tennessee Supreme Court held that a deed to the wife and husband as grantees, conveying her share of property in which she has an undivided interest, will vest in him no greater interest than if the deed were made to the wife alone. The same rule is announced in Davis v. Davis, 46 Pa. St. 342; Stehman v. Huber, 21 Pa. St. 260; Carson v. Carson, 122 N. C. 645.

And this is so even if the deed in the case at bar was made to the plaintiff and her husband by her direction, as the grantors conveyed no part of their shares, and had no interest in the shares embraced in the deed to the grantees; it belonged to the wife by inheritance, and the title being already in her, the deed merely designated her share by metes and bounds in order that it might be held in severalty. [Harrison v. Ray, 108 N. C. 215; Yancey v. Radford, 86 Va. 638.]

Vol 171 mo—27.

But it is said that where more lands are conveyed than the wife's share, as in this case, and a consideration passes between the husband and the grantors of the additional land, an entirely different condition arises, and the consideration in this case supports the case, and, whether much or little, can not be disputed for the purpose of destroying the effect of the conveyance. This precise question was before the Supreme Court of Pennsylvania in the case of Stehman v. Huber, 21 Pa. St. 260, and it was said that "where land is held in common by a married woman and others, and they all join in a partition and her share is conveyed to her and her husband, the law looks at the character of the transaction rather than at the form of the conveyance in order to define her interest, and considers the share as still hers, a divided share being substituted for an undivided one. If the husband has paid money for equality of partition, and the conveyance be to the husband and wife, he acquires an interest in common with her in proportion to the amount paid by him."

That case is bottomed upon the soundest principles of equity, and, as defendant in the case at bar paid towards the purchase money of the additional land allotted to plaintiff the sum of $240, he should be considered as having done so as the surety of his wife and should upon an adjustment of their money transactions be allowed credit with interest at six per cent per annum from the time of its payment. The payment of the balance of the purchase money could of course be enforced against the land.

There is no allegation in the petition upon which to predicate the finding that defendant Propes was indebted to plaintiff for $1,000 or any other sum for money loaned by her to him in 1889, hence, error was committed in making any finding with respect thereto and in adjudging that the same with six per cent interest should be paid to her.

Plaintiff's father died October 4, 1886, and upon his death her interest in the land of which he died seized descended to and vested in her as a legal estate,

and when she thereafter inter-married with defendant Propes and a child was born to them of that marriage, her husband both by the common law and the law of this State was entitled to curtesy initiate in the land inherited by her from her father, and, under ordinary circumstances, to its possession during coverture [1 Wash. on Real Property (5 Ed.), p. 188; Clay v. Mayr, 144 Mo. 376; Woodward v. Woodward, 148 Mo. 241] unless his rights have been changed by statute.   But the petition alleges and the evidence shows, that notwithstanding the finding of the court to the contrary, plaintiff had good cause to live separate and apart from her husband.

The petition alleges and the evidence shows that he violently struck and pushed her and abandoned her while in a delicate and pregnant condition, insultingly telling her that he was under no further obligation to support or wait upon her, and would not furnish her means of support or with the necessaries of life.   That he assaulted and struck her with his fist and also threatened to kill her.   That he rented out her land, and refused to let her do so, but appropriated the rents to his own exclusive use and benefit.   Defendant testified in his own behalf that he never struck her but one time, which was one night a while before she was confined; that he didn't know whether he was just waking up or dozing; that there hadn't been a word spoken between them.   That she struck him, that for some cause or other he struck back at her; that she then jumped out of bed and said she would get a board and knock his brains out. That he then jumped out of bed and told her if she undertook that, he would kill her right there.

It is true that plaintiff's conduct towards her husband was not by any means as kind and gentle as it should have been, but nothing like so bad as that of her husband towards her under the circumstances, which can only be characterized as brutal.

These facts, we think, gave the plaintiff cause to live separate and apart from her husband and bring the case clearly within the provision of section 6865, Re-

vised Statutes of 1889, which provides that, ''If any married woman shall hold real estate in her own right, and her husband, by criminal conduct towards her, or by ill usage, shall give her cause to live separate and apart from him, she may petition the circuit court, setting forth such facts, and therein pray that such estate may be enjoyed by her for her sole use and benefit.''

Defendant was guilty of criminal conduct by assaulting plaintiff with his fist, and by ill usage gave her cause to live separate and apart from him, and authorized the prosecution of this suit under that section. [Sackman v. Sackman, 143 Mo. 576.]

Defendant can not be required to account in this action for the $1,000 loaned to him by plaintiff, but he should be charged with the rents and profits received by him for the land in question, from the time of the commencement of this suit at the rate of three hundred dollars per annum, with six per cent interest per annum thereon from the end of each year, and defendant should be allowed credit on that amount with the $240 and interest thereon from the date of its payment on the land, and plaintiff have judgment against him for the balance.

Our conclusion is that the judgment should be reversed and the cause remanded with directions to the court below to enter up a judgment and decree in favor of plaintiff upon the basis intimated, and that the lands in question be enjoyed by her for her sole use and benefit, and that defendant be enjoined and restrained from in any way interfering therewith.

It is so ordered.     All concur.