**BALCOMB et al. v. VASQUEZ.**

No. 4812.

Court of Civil Appeals of Texas.
El Paso.

June 13, 1951.

Rehearing Denied July 25, 1951.

652

F. W. Balcomb and Edna K. Balcomb, pro se.

Osce Fristoe, and John Q. Adams, both of Harlingen, for appellee.

McGILL, Justice.

Appellant Edna K. Balcomb, joined pro forma by her husband F. W. Balcomb, as plaintiff filed this suit in the 103d Judicial District Court of Cameron County against Francisco P. Vasquez as defendant. The cause of action alleged, though not in statutory form, was in substance an action in trespass to try title to an undivided 200 acres of a certain tract of 250 acres of land situated in Share No. 22, Espiritu Santo Grant in Cameron County. The relief sought was a judgment for title and possession of the said 200 acres undivided, out of said 250 acre tract, and that a certain deed and contract by which her husband, F. W. Balcomb, attempted to convey title to the said 250 acre tract to the defendant, Francisco P. Vasquez, be cancelled and the cloud cast on her title by such instruments be removed. The basis of her suit as reflected by her petition, is that at all relevant times she was the wife of appellant F. W. Balcomb and owned a community homestead interest in 200 acres of the 250 acre tract and that the contract and deed executed by her husband without her joinder was void under Article 16, Section 50 of the Constitution, Vernon's Ann.St.Const., of this State.

Appellant F. W. Balcomb filed a petition in intervention in the suit. He alleged that he was the owner in fee simple of an undivided interest in the 200 acres of the 250 acre tract, and grounded his plea in the statutory form of an action in trespass to try title. He set up substantially the same facts alleged by plaintiff as to her homestead interest in the property, and prayed that he have judgment for title and possession of said land and that the deed and contract be cancelled and the cloud cast on the homestead by reason thereof. be removed.

The defendant filed an elaborate answer, which included a plea of not guilty and general denial, and a plea of innocent purchaser, and estoppel. In the view we take of the case it will not be necessary to state the substance of the pleadings more fully, nor to hereafter refer to them.

Trial was to a jury. At the close of the evidence by all parties the plaintiff Edna K. Balcomb filed a motion for an instructed verdict. This motion was overruled by the court and the court submitted certain special issues to the jury and upon the answers to certain issues submitted in conformity with the charge rendered judgment for the defendant, Francisco P. Vasquez, against the plaintiff Edna K. Balcomb and Intervenor F. W. Balcomb for the title and possession of the 250 acre tract and against the intervenor F. W. Balcomb for all costs of suit.

A brief résumé of the facts as outlined in appellants' brief, which we have checked with the record, and a statement of the material portions of the charge is necessary

for a better understanding of the points raised by appellants.

Appellants were lawfully married at Waycross, Georgia, September 11, 1922, and lived on their farm there until 1935, when the husband went to Punta Gorda, Florida, the wife remaining at Waycross, but visiting him at Punta Gorda frequently until the summer of 1937, when the husband was hospitalized at Chicago, Illinois, for treatment for arthritis, the wife at all times remaining at Waycross and pursuing her profession of teaching until the summer of 1944, when she returned to her ancestral home at Liverpool, Pennsylvania, to resume teaching there and care for her invalid sister, where she has remained until the trial of this suit in 1950. The household furniture of the couple was stored at Waycross. In the winter of 1941, the husband's condition becoming desperate, he came to San Benito, Texas, and supported himself by buying land and reselling it. The 250 acre farm in question was purchased by him on July 29, 1943, and he at once moved on it in a shed and pumphouse 4 ft. x. 8 ft., a tent 7 ft. x 9 ft., and a frame covered with building paper 8 ft. x 12 ft. He farmed the cleared land, clearing a few acres, rented a pasture, rebuilt and extended the fencing. This occupation by him continued except for temporary absences and when it was prevented by court injunctions, until the filing of this suit. Each year he rendered the farm for taxes, claiming homestead for himself and wife. Early in March 1947 negotiations were initiated resulting in an escrow agreement of May 12, 1947, by which he placed in escrow in the Los Fresnos State Bank in Los Fresnos, Texas, a deed conveying said property to be delivered to appellee upon certain conditions. The deed bears even date with the contract and contains this paragraph:

"And I, the said F. W. Balcomb, do hereby covenant, represent and warrant that I am now a single man and that I have not been married since the date I acquired the above described land and premises and that no community interest has interposed between said dates."

There is testimony which was not controverted that it was understood between the plaintiff Edna K. Balcomb and her husband that she should use community funds secured by her own efforts for her support and maintenance and that the husband did furnish her with small sums for this purpose from money borrowed from his sister, and that in June 1944 he furnished her with the sum of $503.00 which was a commission earned with her cooperation, further that she was assured of additional support from him if needed, but that no additional support was requested.

The court in his charge defined "head of a family" as follows:

"The term 'head of a family' as the term is used in this charge means the head of a household where the relations of husband and wife exist and, though his wife may not be living on the property, the relationship of husband and wife is being maintained by the parties, with the husband recognizing his legal duty to support his wife and he actually contributing to her comfort, support and maintenance to the best of his ability under existing conditions, both from a financial standpoint as well as from the standpoint of her social and personal well being."

and submitted Special Issue No. 1:

"Do you find from a preponderance of the evidence that at the time F. W. Balcomb moved upon said 250 acre tract in 1943 he was the 'head of a family' as that term has been defined in this charge?"

to which the jury answered "No". The charge then continued:

"If you have answered the next preceding question 'yes', and only in that event, then answer the following two questions:

"Special Issue No. 2: Do you find from a preponderance of the evidence that at the time the intervenor, F. W. Balcomb, purchased and moved on to the 250-acre tract of land in 1943 that he did so for the purpose of establishing on said tract of land a homestead for himself and the plaintiff, Edna K. Balcomb?

"You will answer this question 'yes' or 'no'. We, the jury, answer: ⎯⎯⎯⎯

"Special Issue No. 3: Do you find from a preponderance of the evidence that after moving upon the 250-acre tract in question in 1943, the intervenor, F. W. Balcomb, occupied and used said tract of land for the purpose of such homestead as inquired about in Special Issue No. 2? You will answer this question 'yes' or 'no'."

These two issues were unanswered by the jury. In response to Special Issues Nos. 4 to 7 inclusive, the jury found that F. W. Balcomb represented to the defendant, Francisco P. Vasquez, before or at the time of the execution of the deed to the property here in question, that he, said F. W. Balcomb, was a single man; that Francisco P. Vasquez relied in good faith on such representation, he having made in person or through his attorney such investigation as to the marital status of F. W. Balcomb as a person of ordinary prudence would have made under the same or similar circumstances.

The points of error on which appellants predicate their appeal and seek a reversal are thus stated in their brief:

"Points—1. The qualifying definition specified the wrong determining factor.

"2. Denial of Plaintiff's motion for a directed verdict was error.

"3. The answer stated no defence to Plaintiff's claim of homestead.

"4. Special Issue No. 1 specified the wrong determining date.

"5. Special Issue No. 1 delegated a wrong function to the jury.

"6. The definition submitted a mixed question of law and fact.

"7. The contract and deed, (dft.ex. A & B) were void ab initio.

"All are fundamental errors except 2 and all were reviewed on the hearing of the motions for new trial."

It is at once apparent that during the trial the only error appellants pointed out to the court was the denial of plaintiff Edna K. Balcomb's motion for an instructed verdict. The denial of this motion is the basis for their point of error No. 2. The other errors on which reversal is now sought were not called to the attention of the trial court except in appellants' motions for a new trial. We think these errors are not such fundamental errors as may be considered by this court under the holding in Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, but we shall nevertheless discuss them in connection with our consideration of appellants' point No. 2:

■ The grounds for an instructed verdict stated by plaintiff in her motion are:

"(1) The undisputed evidence shows that plaintiff and F. W. Balcomb have maintained their marriage status at all times since their marriage in 1922, and all the facts and circumstances adduced at the trial support such evidence.

"(2) Because the undisputed evidence shows that F. W. Balcomb acquired the property in question as a homestead for himself and plaintiff, by rendering it for taxes as their homestead, by maintaining his residence on it, fencing it, cultivating a portion of it, pasturing the rest, and erecting a place in which to live.

"(3) Even if the defendant could defeat the homestead rights of the plaintiff by proving himself to be an innocent purchaser, the evidence adduced by the defendant during the trial is insufficient to support his plea of innocent purchaser."

Appellants assert that the factor specified in the definition given in connection with Special Issue No. 1, i. e., support of the wife by the husband, as a condition precedent to his being the head of the family, and hence qualified to dedicate a homestead is the "kingpin in the alley" and the controlling question on this appeal. Appellee states in his brief that the "whole case of appellants must stand or fall on the question of appellant F. W. Balcomb being the head of the family." In our opinion neither of these positions is correct. It is true that the "homestead of a family" protected by Art. 16, Section 50 of the Constitution of this State can be selected or dedicated only by the head of a family. In Ratliff v. Smith, Tex.Civ.App., 178 S.W.2d 138, loc.cit. 140 (2) (Wr.Ref.) this court said:

"(2) The homestead of the family is initiated by the dedication thereof by the

head of the family. Dedication of a rural homestead is accomplished by occupancy thereof by the head of the family as a place of residence and the use thereof for the support of the family."

It is true that this quotation is dicta as applied to the facts of the case, but it is dicta approved by the Supreme Court by the unqualified refusal of a writ of error. Rule 484, Texas Rules of Civil Procedure.

The proposition that the dedication must be by the head of the family has, so far as we know, never been questioned. Nevertheless the dedication of the property as a homestead must be shown by those seeking protection thereof as a homestead under the Constitution. Under the record in this case it may be conceded that F. W. Balcomb was the head of a family so as to qualify him to dedicate or select the property involved as a homestead, but unless appellants prove that he did so as a matter of law plaintiff was not entitled to a directed verdict. As said in Roberson v. Home Owners' Loan Corp., Tex.Civ. App., 147 S.W.2d 949, loc.cit. 953, (Wr. Dis. judgment correct):

"Homestead exemption is a right conferred by law upon the head of a family, and unless such party avails himself of such right by pleadings and proof, courts cannot assume facts exist against the validity of an existing debt and lien, or that the homesteaders wish to claim the exemption."

We agree with appellants in their contention that at all relevant times under the uncontroverted evidence in this case F. W. Balcomb was the head of the family and qualified to dedicate or select a homestead for the family, which consisted of himself and his wife, Edna K. Balcomb; that no jury issue was raised as to this question, and that the court erroneously submitted Special Issue No. 1 to the jury; also that the definition of "head of a family" as given in connection with Special Issue No. 1 was erroneous. In our opinion, where the family consists of husband and wife only, and the marital status still exists, the husband is the head of the family so as to qualify him to dedicate or select the family homestead protected by the Consti-

tution, irrespective of whether the parties are "maintaining the relationship of husband and wife" or whether the husband is "recognizing his legal duty to support his wife and is actually contributing to her comfort and support and maintenance to the best of his ability" or not. Since we deem an authoritative holding on this question unnecessary to a proper disposition of this appeal we shall not labor the question, but shall content ourselves by saying that a careful reading of Chief Justice Cureton's opinion in Schulz v. L. E. Whitham & Co., 119 Tex. 211, 27 S.W.2d 1093, and authorities there cited, especially Ray v. Curry, Tex.Civ.App. 126 S.W. 26; and Linares v. De Linares, 93 Tex. 84, 53 S.W. 579; has fortified rather than weakened our conviction. In Linares v. De Linares, although the uncontroverted evidence established a permanent separation without any support of the wife by the husband, the court did not hold that the husband was disqualified to select or dedicate the family homestead because he was not the head of a family. The basis of the decision is found in the language:

"The fact that they had agreed upon and had effected a permanent separation precludes the idea that it was ever intended by either that she should reside there. It was clearly not in fact the homestead of a family, nor do we think it can be deemed so in construction of law." [93 Tex. 84, 53 S.W. 580.]

The facts on which appellants rely to show a dedication or selection of the property involved by F. W. Balcomb as the homestead of himself and his wife are stated in (2) of plaintiff's motion above quoted. No further facts are pointed out by appellants in their brief, and we have felt that we are not required to wade through a lengthy Statement of Facts consisting of 668 typewritten pages to ascertain whether there are any other facts which would tend to show a dedication or selection. On the other hand, the evidence is uncontroverted that F. W. Balcomb represented that he was a single man in his dealings with appellee in contracting for the sale of the property, and in the deed conveying it, and appellee has pointed

out in his brief certain testimony of F. W. Balcomb to effect that he bought the 250-acre tract of land, of which an undivided 200 acres is here involved, for the purpose of selling it. These facts were sufficient to raise an issue as to whether F. W. Balcomb ever dedicated or selected the land involved as the homestead of himself and wife. That the trial court so viewed the evidence is attested by his conditional submission of Special Issues Nos. 2 and 3. Quoting again from Roberson v. Home Owners' Loan Corporation, supra, 147 S. W.2d 952–953:

"The law does not contemplate, forsooth, that because the head of a family lives with his wife and children, on the property, such occupancy ipso facto makes the property his homestead. It is quite possible that the head of a family, owning property and occupying it with his family, may never legally designate it as his homestead; and, again, a legally designated homestead may be the subject of a waiver. It has been held in this state, since the earliest decisions, that 'intention in good faith to occupy is the prime factor' in impressing property with the homestead character. Intention alone, without overt acts of homestead occupancy, cannot give a homestead right; *but, at the same time, it is equally true that all other things combined cannot give it, absent the intention to dedicate it to the uses of a home.*" (Emphasis ours.) and from Chief Justice Gaines' opinion in Linares v. De Linares, supra:

"The constitution protects from sale under execution 'the homestead of a family.' Const.art. 16, § 50. The statute, in providing for exemptions from forced sale, specifies first 'the homestead of the family.' The property in controversy in this case was the homestead of the decedent, but the question arises, was it the homestead of the family? The family in this case consisted of Pioquinto Linares and his wife. It was his residence, but it was not hers. She never lived upon it. Neither did he or she at any time contemplate that it ever should be. The fact that they had agreed upon and had effected a permanent separation precludes the idea that it was ever intended by either that she should reside there. It was clearly not in fact the homestead of a family, nor do we think it can be deemed so in construction of law. The case differs materially from that of Henderson v. Ford, 46 Tex. 627, and also from that of Clements v. Lacy, 51 Tex. 150. In each of these cases, it is true, the wife never lived upon the land in question; but in each it clearly appears that it was intended both by the husband and the wife that she should do so as soon as circumstances should permit. In the former, a Confederate soldier, who owned land in Texas, and lived upon it as his homestead, married in Alabama; he and his wife contemplating at the time of their marriage that it should be their home. It was held that it became their homestead, and that a subsequent conveyance by the husband, not joined in by the wife, did not pass the title. In the latter case the court say 'that the mere absence of the wife from the state, when not designed as an abandonment of the husband, but with his consent, and with the intention to make his domicile here her future home, will not work a forfeiture of her homestead rights.' The intention to make the property the home of the wife as well as that of the husband, which existed in both of the cases cited, was absent in the present case."

It is quite clear, we think, from these authorities that the mere occupancy of the property by F. W. Balcomb as his residence did not as a matter of law amount to a dedication or selection of any part of it as the homestead of himself and his wife. His intention to so dedicate or select was also necessary to effectuate a dedication or selection and a question of fact was therefore presented. Appellants did not object to the charge of the court or to the conditional submission of Special Issues Nos. 2 and 3. They therefore waived their right to jury trial on these issues and they must be taken as having been answered by the court in such manner as to support the judgment. The dedication or selection of the property involved by F. W. Balcomb as the homestead of the family was an essential element of appellants' cause of action. It was incumbent upon them to secure a favorable jury finding on this ele-

ment of their cause of action or to object to the submission of the case to the jury in such a manner that such answer might be prevented. In failing to answer Special Issues Nos. 2 and 3 the jury literally followed the court's charge. Appellants did not insist that these issues be so submitted that an answer favorable to them would be considered. It therefore follows that under Rule 279, T.R.C.P., they waived their right to a jury answer on the unanswered issues 2 and 3, and these issues must be taken as having been answered by the court in such a manner as to support the judgment. This rule was authoritatively enunciated by the Supreme Court in the case of Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, and followed by this court in Anderson v. Broome, Tex.Civ.App. 233 S.W.2d 901 (w. r.n.r.e.). We think it applicable and controlling here. Its application to the facts of this case works no substantial hardship to appellants. The logical deduction from the jury's answer to Special Issue No. 1, which we think the court erroneously submitted in connection with the erroneous definition of "head of a family" given in connection therewith, is that the jury impliedly found that because of the long separation, extending over a period of some thirteen years, a permanent separation of the parties was agreed upon and there was no intention on the part of either that the normal relationship of husband and wife should again be resumed. If this were the basis for the jury's answer to Special Issue No. 1 then appellants have been afforded a jury trial on the very issues which under the above rule the trial court found against them. Under Linares v. De Linares, supra, if such were the fact the idea that it was ever intended by either of the parties that appellant Edna K. Balcomb should ever reside upon the property was precluded.

■ Furthermore, we sustain appellee's proposition that each of appellants is estopped from claiming any homestead interest in the property because of the jury findings as to the misrepresentations of F. W. Balcomb to effect that he was a single man when he acquired the property and that no community rights had intervened and appellee's reliance thereon. The deed by which appellants acquired any interest in the property conveyed it to F. W. Balcomb alone. His was the legal title, the title to his wife being purely equitable. This has been adjudicated by a long line of decisions of our Supreme Court: Hill v. Moore, 62 Tex. 610; Edwards v. Brown, 68 Tex. 329, 4 S.W. 380, 5 S.W. 87; Patty v. Middleton, 82 Tex. 586, 587, 17 S.W. 909; Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121; Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346 (Comp.App. opinion adopted).

The husband was clearly estopped to say that his possession was sufficient to incite inquiry concerning a homestead claim, and since the homestead claim of the wife attached only to an equitable interest she is likewise estopped to assert it and it collapses as to the wife as well as to the husband, regardless of whether she participated in or had any knowledge of the misrepresentations. Home Owners Loan Corporation v. Netterville, 134 Tex. 30, 132 S.W.2d 93 (Com.App.op. adopted); First State Bank of Carbon v. Thurman, Tex.Com.App., 12 S.W.2d 146; Federal Life Ins. Co. v. Martin, Tex.Civ.App., 157 S.W.2d 149 (wr.ref.).

Under our holdings the question as to whether the deed executed by F. W. Balcomb alone was void or merely inoperative is purely academic. An interesting discussion of this question may be found in Vol. 3 of Baylor Law Review, 414, under comment on Marler v. Handy, 88 Tex. 421, 31 S.W. 636.

■ In a supplemental brief appellants present two additional points. Point 8 is that the court erred in excluding intervenor's letter of July 31, 1949, written to the trial judge, a copy of which was received by appellee's attorney. This letter had reference to another lawsuit, but appellants contend that the sixth paragraph thereof was sufficient to warrant an inference by the jury that appellant F. W. Balcomb was thereby claiming a homestead interest in the property here involved

and to put appellee on notice of such claim. The paragraph referred to is:

"No. 6. Besides, the Florence case only restrained the Defendant from taking the fund out of the State of Texas, and if that obtained in the instant case in late April, it no longer does as Defendant has returned to his home and domicile, his homestead is here, his property and business interests are here and is a 'fixture' of the State of Texas and sovereign voter the same as petitioner or anyone else."

We agree with the trial court's view that the language of this paragraph was too indefinite to warrant any inference that F. W. Balcomb was asserting any homestead claim to any specific property; furthermore it appears from the transcript that plaintiff's original petition in this suit was filed on December 21, 1949, and there is nothing in the record which has been called to our attention which indicates that appellee's attorney in this suit was representing him in any matter at the time the letter was written and received by such attorney. If the attorney was not representing appellee at the time, any knowledge of a homestead claim on the part of appellants which he may have acquired would not be binding on appellee. In such event it was a matter res inter alios acta. The letter was properly excluded.

■ Appellants' other point is in substance that since the jury was permitted to make findings on but two issues, i. e., head of a family and innocent purchaser, the appeal was necessarily limited to these issues, and since the appellee requested a Statement of Facts which was not so limited, his action in so doing was arbitrary within the purview of Rule 377(e) T.R. C.P., and he should therefore be taxed with the additional cost of such Statement, even though he be successful on this appeal. From what we have said it is obvious that this appeal is not limited to the two jury findings. Furthermore, appellants did not file with the Clerk of the trial court a statement of points on which they intended to rely on appeal, as provided by Rule 377–a, T.R.C.P., and appellee can not be charged with "prophetic ken" as to what course the appeal might run. His action in requesting an additional Statement of Facts was therefore not arbitrary under Rule 377(e).

The judgment of the trial court is in all respects affirmed.